1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IRENEO RECINTO, et al.,<br><br>            Plaintiff,<br><br>    vs.<br><br>THE UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; ERIK K. SHINSEKI, Secretary of Department of Veterans Affairs; and W. SCOTT GOULD, Deputy Secretary of Veterans Affairs,<br><br>            Defendants. | Case No:  C 10-4542 SBA<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Dkt. 17 |

       Plaintiffs, seven Filipino World War II veterans and twenty-one widows of deceased Filipino war veterans, bring the instant action against the United States Department of Veterans Affairs ("VA"), Secretary of Veterans Affairs Eric K. Shinseki and Deputy Secretary W. Scott Gould.  The Complaint alleges that the VA's refusal to provide Plaintiffs with one-time payments under the Filipino Veterans Equity Compensation Fund ("FVEC"), which was created under the American Recovery and Reinvestment Act of 2009 ("2009 Recovery Act"), Pub.L. No. 111-5, 123 Stat. 115, violates their rights to due process and equal protection under the Fifth Amendment.  The parties are presently before the Court on Defendants' Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Dkt. 17.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion for the reasons set forth below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

1    I.      BACKGROUND

2           A.      THE RESCISSION ACT AND THE FVEC

3           The Philippine islands became a United States possession in 1898 when they were

4    ceded from Spain following the Spanish-American War.  See Pub.L. No. 111-5, Title X,

5    § 1002(a), 123 Stat. 115, 200.  During World War II, Filipinos served in a variety of units,

6    some of which came under the direct control of the United States Armed Forces.  Id.

7    Among those called into service by an executive order of President Franklin D. Roosevelt

8    issued on July 26, 1941, were the regular Philippine Scouts, the new Philippine Scouts, the

9    Guerrilla Services, and more than 100,000 members of the Philippine Commonwealth

10   Army.  Id.  After the war ended, the new Philippine Scouts remained in service until the

11   end of 1946.  Id.

12          In 1946, the First Supplemental Surplus Appropriation Rescission Act of 1946

13   ("Rescission Act"), Pub.L. No. 79-301, 60 Stat. 6 (1946), became law.  See 38 U.S.C.

14   § 107.  A rider attached to this legislation conditioned a $200 million grant to the post-war

15   Philippine Army on the ineligibility of the Filipino war veterans with respect to VA

16   benefits.  Besinga v. United States, 14 F.3d 1356, 1359 (9th Cir. 1994).  As currently

17   codified, the Rescission Act provides:

18                  Service before July 1, 1946, in the organized military forces of
                    the Government of the Philippines, while such forces were in
19                  the service of the Armed Forces of the United States pursuant to
                    the military order of the President dated July 26, 1941,
20                  including among such military forces organized guerrilla forces
                    under commanders appointed, designated, or subsequently
21                  recognized by ... competent authority in the Army of the United
                    States, shall not be deemed to have been active military, naval,
22                  or air service for the purposes of any law of the United States
                    conferring rights, privileges, or benefits upon any person by
23                  reason of the service of such person or the service of any other
                    person in the Armed Forces,…
24

25   38 U.S.C. § 107(a) (emphasis added).  Thus, Filipino veterans who served under United

26   States command while in the Philippine military were excluded from receiving VA

27   benefits, since eligibility for veteran benefits is dependent upon "veteran" status, which, in

28   turn, is dependent upon service "in the active military, naval, or air service."  38 U.S.C.

§ 101(2); see Quiban v. Veterans Admin., 928 F.2d 1154, 1158 n.7 (D.C. Cir. 1991). The Second Supplemental Surplus Appropriation Rescission Act of 1946, Pub.L. No. 79-391, 60 Stat. 223, codified at 38 U.S.C. § 107(b), placed similar limitations upon benefits payable to members of the new Philippine Scouts. See Quiban, 928 F.2d at 1158. "The practical consequence of this legislation was to render Commonwealth Army and New Philippine Scouts personnel ineligible for all United States veterans benefits, except for certain service-connected disability and death benefits." Besinga, 14 F.3d at 1359.

In February 2009, President Barack Obama signed the 2009 Recovery Act into law, § 1002 of which called for the creation of the FVEC. Pub.L. No. 111-5, Title X, § 1002, 123 Stat. 115, 200-02.[1] The FVEC authorizes a one-time payment to "eligible persons." Id. § 1002(b). Section 1002(d) defines "eligible persons" as follows:

> (d) ELIGIBLE PERSONS.—An eligible person is any person who—
>
>    (1) served—
>
>       (A) before July 1, 1946, in the organized military forces of the Government of the Commonwealth of the Philippines, while such forces were in the service of the Armed Forces of the United States pursuant to the military order of the President dated July 26, 1941, including among such military forces organized guerrilla forces under commanders appointed, designated, or subsequently recognized by the Commander in Chief, Southwest Pacific Area, or other competent authority in the Army of the United States; or
>
>       (B) in the Philippine Scouts under section 14 of the Armed Forces Voluntary Recruitment Act of 1945 (59 Stat. 538); and
>
>    (2) was discharged or released from service described in paragraph (1) under conditions other than dishonorable.

Id. § 1002(d). Eligible Filipino veterans who are citizens of the United States are entitled to a one-time payment of $15,000, while non-citizens are entitled to a one-time payment of $9,000. Id. § 1002(e). If an eligible veteran timely applied for compensation but died prior to receiving payment, the surviving spouse, if any, is entitled to payment. Id. § 1002(c)(2).

---

[1] Section 1002 of the 2009 Recovery Act is entitled Payments to Eligible Persons Who Served in the United States Armed Forces in the Far East During World War II.

In establishing the FVEC, Congress directed the VA to "administer the provisions of this section in a manner consistent with applicable provisions of Title 38, United States Code, and other provisions of law, and shall apply the definitions in section 101 of such title in the administration of such provisions, except to the extent otherwise provided in this section." Id. § 1002(j).

### B. FACTUAL SUMMARY

Plaintiffs Ireneo Recinto, Bienvenido Galas, Sr., Ricardo Pinero, Juanita Quimbo, Florentino S. Torralba, Eder Andrade and John M. Aspiras, Jr. are United States citizens and Filipino war veterans who filed claims for FVEC payments. Compl. ¶¶ 21, 29. All of their claims were denied on the following ground:

> Basic eligibility to VA benefits may be established upon verification of valid military service by the National Personnel Records Center (NPRC) at St. Louis, [Missouri]. Based on the information/evidence you submitted with your claim, NPRC is unable to verify that you served as a member of the Commonwealth Army of the Philippines, including the recognized guerrillas, in the service of the Armed Forces of the United States.

Compl. ¶ 30 (emphasis added). According to Plaintiffs, NPRC records are an unreliable means for verifying prior service because a fire in 1973 destroyed a significant number of military records of personnel who potentially served during World War II. Id. ¶¶ 38-41. As such, these Plaintiffs did not appeal the denials of their claims, believing that it would be futile to do so. Id. ¶ 31.

The remaining Plaintiffs, Maria Agbunag, Corazon Ambata, Ofelia C. Amio, Beatriz Buena Ballais, Ramona F. Battung, Laureana E. Bungay, Florentina Delos Santos, Cora Dimla, Lolita Eugenio, Eustoquia B. Faber, Maria D. Galang , Ester G. Galang, Feliza Galeon, Juanita Gilo, Paciencia M. Mendoza, Angelina V. Natividad, Engracia A. Ocampo, Soledad N. Respito, Julie De Vera, Jovita Salamet and Antonieta Villareal, are widows of United States citizen Filipino war veterans. Id. ¶ 22. These Plaintiffs contend that they should be eligible for benefits, notwithstanding the fact that their husbands died before the FVEC was enacted. Id. ¶ 33.

### C.   PROCEDURAL HISTORY

On October 7, 2010, Plaintiffs filed the instant action in this Court, alleging four claims for relief.  First, Plaintiffs allege that the VA's reliance on official personnel records maintained by the federal NPRC to determine eligibility for benefits under the FVEC "is patently unfair, arbitrary, unreasonable and therefore violative of the due process clause." Compl. ¶¶ 43.

Second, Plaintiffs contend that the FVEC's exclusion of war veterans who died before its passage "violates the equal protection clause as no valid or rational basis exists to discriminate against those who died before passage of the law…." id. ¶ 48.

Third, they aver that FVEC violates the equal protection clause by providing a larger cash benefit to United States citizens compared to non-citizens.  Id. ¶ 49.

Finally, Plaintiffs allege that the FVEC violates their right to equal protection because, although it recognizes Filipino veterans as having been in "active military service," they nonetheless are not entitled to the same benefits as veterans of the United States Armed Forces.  Id. ¶ 51.  As a corollary matter, Plaintiffs also assert that the benefits paid under the FVEC are "way below that received by other veterans …. [which] violates the equal protection clause and deprives plaintiffs without due process of the benefits that other US [sic] veterans enjoy."  Id. ¶ 52.

As relief, Plaintiffs seek an order requiring Defendants to: (1) Consider evidence other than NPRC records as proof of military service; (2) declare that widows of Filipino veterans have a right to file claims under the FVEC on behalf of their deceased spouses; (3) declare that non-United States Filipino war veterans are entitled to the same payment as their United States citizen counterparts; and (4) declare the Filipino war veterans are entitled to the same benefits as any other United States veteran.  Id. at 26-27.

Defendants now move to dismiss all of the causes of action alleged in the Complaint.  Defendants contend that the first and third claims should be dismissed for lack of jurisdiction under Rule 12(b)(1), respectively, on the grounds that (1) claims based on the wrongful denial of veterans benefits cannot be litigated in federal court and that the VA

is otherwise immune from suit, and (2) Plaintiffs, all of whom are United States citizens or widows of United States citizens, lack standing to complain that non-citizens receive a lower benefit under the FVEC. In addition, Defendants contend that Plaintiffs' remaining claims are subject to dismissal under Rule12(b)(6) for failure to state a claim on the grounds that Plaintiffs have failed to show that any disparity in benefits under the FVEC lacks a rational basis and that Plaintiffs have not otherwise demonstrated the existence of a protectable property interest. Plaintiffs have filed an opposition to the motion, and Defendants have filed a reply. The matter is fully briefed and ripe for adjudication.

## II.   LEGAL STANDARD

### A.   RULE 12(B)(1)

A complaint may be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). In a "facial" challenge, the court assumes the truth of plaintiff's factual allegations and draws all reasonable inferences in its favor. Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009). In the case of a "speaking" motion, the court is not restricted to the face of the pleadings and "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988). In that case, "[i]t then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." Colwell v. Dept. of Health and Human Servs., 558 F.3d 1112, 1121 (9th Cir. 2009) (internal quotation marks and citation omitted). However, a facial attack need not be converted to a speaking motion where "the additional facts considered by the court are contained in materials of which the court may take judicial notice." Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994) (citation omitted). "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its

existence." <u>Rattlesnake Coalition v. United States Envtl. Protection Agency</u>, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007).

B.   **RULE 12(B)(6)**

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990). The Court "accept[s] as true all well-pleaded allegations of material fact, and construe[s] them in the light most favorable to the non-moving party." <u>Daniels-Hall v. National Educ. Ass'n</u>, 629 F.3d 992, 998 (9th Cir. 2010). In adjudicating a Rule 12(b)(6) motion, the Court may consider matters that are properly the subject of judicial notice under Federal Rule of Evidence 201. <u>Barron v. Reich</u>, 13 F.3d 1370, 1377 (9th Cir. 1994) (taking judicial notice of records and reports of administrative bodies); <u>e.g.</u>, <u>Paralyzed Veterans of Am. v. McPherson</u>, No. C 06-4670 SBA, 2006 WL 3462780, at *4 (N.D. Cal. Nov. 28, 2006) (taking judicial notice of excerpts from the Congressional Record) (Armstrong, J.). Where a complaint or claim is dismissed, leave to amend generally is granted, unless further amendment would be futile. <u>Chaset v. Fleer/Skybox Int'l</u>, 300 F.3d 1083, 1087–88 (9th Cir. 2002).

## III.   DISCUSSION

A.   **FIRST CLAIM FOR RELIEF**

Plaintiffs' first claim for relief alleges that the NPRC records pertaining to Filipino war veterans are "incomplete and unreliable," and as such, the VA's reliance on them to determine eligibility for payment under the FVEC violates their right to due process. Compl. ¶ 43. As will be set forth below, the Court lacks subject matter jurisdiction to consider this claim for two independent reasons.

### 1.   Veterans' Justice Review Act

Generally, the decisions of the VA as to any question of law or fact affecting the provision of benefits to veterans or their dependents are "final and conclusive and may <u>not</u>

be reviewed by any other official or by any court." 38 U.S.C. § 511(a) (emphasis added).[2]

Under the Veterans' Judicial Review Act of 1988 ("VJRA"), Pub. L. No. 100-687, Div. A,

102 Stat. 4105, an aggrieved claimant must first appeal the VA's decision to the Secretary,

and then to the Board of Veterans Appeals. 38 U.S.C. § 7104(a). In limited circumstances,

certain issues of law may be appealed to the Federal Circuit. 38 U.S.C. § 7292(c)[3]; see

Henderson ex rel. Henderson v. Shinseki, -- U.S. --, 131 S.Ct. 1197, 1201 (2011). The

VJRA provides claimants with the exclusive means for appealing benefit decisions made by

the VA. See 38 U.S.C. § 7252(a); see Zuspan v. Brown, 60 F.3d 1156, 1158 (5th Cir.

1995) (noting that the VJRA "clearly announced the intent of Congress to preclude review

of benefits determinations in federal district courts."); Hicks v. Small, 69 F.3d 967, 968

(9th Cir. 1995) (holding that the VJRA precluded plaintiff's Bivens claims).

Plaintiffs contend that because they "come before the court to ask for a declaration

of their rights under the [Act] in accordance with the due process and equal protection

clause of the constitution," their claim is not barred by the VJRA. See Pls.' Opp'n at 4.

As support, Plaintiffs cite Johnson v. Robison, 415 U.S. 361 (1974), a case in which the

Supreme Court addressed 38 U.S.C. § 211(a), the predecessor to § 511(a). The Court held

that while § 211(a) precluded judicial review of decisions "made by the Administrator in

the interpretation or application of a particular provision of the statute to a particular set of

facts," it did not foreclose judicial review of constitutional challenges to veterans' benefits

legislation. Id. at 366-74. Interpreting Johnson, the Ninth Circuit has instructed courts to

examine the "substance" of the action to determine whether it challenges a decision by the

_____

[2] Section 511(a) states: "The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise."

[3] Section 7292(c) provides, in relevant part: "The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof brought under this section, and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision."

VA on a "question of law or fact concerning a benefit provided by a law administered by the Veterans Administration," or instead, challenges the constitutionality of an Act of Congress.  See Devine v. Cleland, 616 F.2d 1080, 1084 (9th Cir. 1980) (citing Moore v. Johnson, 582 F.2d 1228, 1232 (9th Cir. 1978)).  Only the latter type of challenge may be litigated in federal district court.  Id.

Here, Plaintiffs are not alleging that the FVEC specifically or the 2009 Recovery Act in general is unconstitutional.  Rather, they are complaining that the VA's denial of their claim for benefits is improper because the VA relies on allegedly unreliable military records as a means of determining whether a claimant qualifies for benefits under the FVEC.  Compl. ¶¶ 41-43.  However, ascertaining the reliability of NPRC records and the reasonableness of the VA in utilizing such records to confirm prior military service inherently involves "questions of law or fact concerning a benefit provided by a law administered by the Veterans Administration[.]"  38 U.S.C. § 511(a).  As such, Plaintiff's claim falls squarely within the purview of the VJRA.  See Devine, 616 F.2d at 1084; e.g., Hicks v. Small, 69 F.3d 967, 968 (9th Cir. 1995) (court has no jurisdiction under the VJRA to consider Bivens claim that would necessitate a consideration of issues of law and fact involving the VA's decision to reduce plaintiff's benefits); Beamon v. Brown, 125 F.3d 965, 970-71 (6th Cir. 1997) (holding that challenge to the manner in which the VA processes claims for benefits was precluded by the VJRA).  The Court therefore concludes that it lacks jurisdiction to entertain Plaintiffs' first claim for relief.

### 2.    Sovereign Immunity

Alternatively, Plaintiffs' first claim is barred by the doctrine of sovereign immunity.  "[T]he United States, as sovereign, is immune from suit, save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  United States v. Dalm, 494 U.S. 596, 608 (1990) (citation and internal quotations omitted).  "[T]he existence of consent is a prerequisite for jurisdiction."  United States v. Mitchell, 463 U.S. 206, 212 (1983); Vacek v. U.S. Postal Serv., 447 F.3d 1248, 1250 (9th Cir. 2006). "Where a suit has not been consented to by the United States,

1  dismissal of the action is required."  Gilbert v. DaGrossa, 756 F.2d 1455, 1458 (9th

2  Cir.1985).  Sovereign immunity extends to government agencies, including the VA. See

3  Weber v. Dep't of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008).  A party bringing

4  a claim against the federal government bears the burden of showing an unequivocal waiver

5  of immunity.  See Holloman v. Watt, 708 F.2d 1399, 1401 (9th Cir. 1983).

6  　　　Plaintiffs rely on the Administrative Procedures Act ("APA"), which acts as a

7  limited waiver of sovereign immunity for certain agency actions.  5 U.S.C. § 702.

8  However, the APA denies authority to grant relief if review is precluded by other statutes.

9  5 U.S.C. § 701(a)(1).  As discussed above, in the case of decisions involving VA benefits,

10  district court review is disallowed under 38 U.S.C. § 511 and the VJRA.  Moreover, relief

11  under the APA is available only where there is a "final agency action for which there is no

12  other adequate remedy in a court…."  5 U.S.C. § 704.  The VJRA affords such a remedy

13  for constitutional and other violations relating to the denial of benefits—and Plaintiffs do

14  not dispute otherwise.  In sum, Plaintiffs' failure to demonstrate an unequivocal waiver of

15  sovereign immunity based on the facts alleged presents a separate and independent ground

16  for dismissing their first claim for relief.

17  　　　**B.　　SECOND CLAIM FOR RELIEF**

18  　　　Plaintiffs' second claim alleges that barring widows of Filipino war veterans who

19  died prior to the passage of the FVEC from receiving payment thereunder constitutes a

20  denial of equal protection.  Compl. ¶ 48.  In particular, they aver that no rational basis

21  exists for distinguishing between surviving spouses of persons who died after filing a claim

22  and surviving spouses of persons who died before the enactment of the FVEC.  Id.  In

23  particular, they assert that since the purpose of the FVEC was to honor the service of

24  Filipino veterans, the fact that a veteran died before making a claim should not foreclose his

25  or her spouse from obtaining benefits from the Compensation Fund.  Id.

26  　　　"The Equal Protection Clause ... is essentially a direction that all persons similarly

27  situated should be treated alike."  City of Cleburne v. Cleburne Living Center, Inc., 473

28  U.S. 432, 439 (1985). "'To state a claim ... for a violation of the Equal Protection Clause ...

1    a plaintiff must show that the defendants acted with an intent or purpose to discriminate

2    against the plaintiff based upon membership in a protected class.'" Lee v. City of Los

3    Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (quoting Barren v. Harrington, 152 F.3d 1193,

4    1194 (9th Cir. 1998)); Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008)

5    ("[i]n order to claim a violation of equal protection in a class of one case, the plaintiff must

6    establish that the [defendant] intentionally, and without rational basis, treated the plaintiff

7    differently from others similarly situated.").

8        The parties agree that no suspect classification or a fundamental right is implicated

9    in this matter, and therefore, the rational basis standard is germane.  Under the rational

10   basis test, the Court looks to where "there is any reasonably conceivable state of facts that

11   could provide a rational basis for the classification."  FCC v. Beach Comm'cns, Inc., 508

12   U.S. 307, 313 (1993).  The plaintiff bears the burden of showing that there "is no rational

13   basis for the difference in treatment."  Thornton v. City of St. Helens, 425 F.3d 1158, 1167

14   (9th Cir. 2005) (internal quotation marks omitted).  "Under rational basis review, the

15   [government] actor has no obligation to produce evidence to sustain the rationality of a

16   statutory classification; rather, the burden is on the one attacking the legislative

17   arrangement to negative every conceivable basis which might support it."  Johnson v.

18   Rancho Santiago Cmty. College Dist., 623 F.3d 1011, 1031 (9th Cir. 2010) (internal

19   quotations and citation omitted); Heller v. Doe, 509 U.S. 312, 320 (1993) (noting that the

20   government "has no obligation to produce evidence to sustain the rationality of a statutory

21   classification.").

22       Here, the record shows that the congressional debate surrounding the 2009 Recovery

23   Act, of which the FVEC is a part, demonstrates that Congress was concerned about the

24   need to stimulate the economy and create jobs, while minimizing the impact on the

25   Treasury and the deficit.  See 155 Cong. Rec. S1617, S1618 (daily ed. Feb. 5, 2009); 155

26   Cong. Rec. S1387, S1401 (daily ed. Feb. 3, 2009).  Extending FVEC eligibility to the

27   surviving spouses of veterans who died before the law was enacted would have drastically

28   increased the overall cost of implementing the FVEC and the 2009 Recovery Act.  This

concern is particularly acute, given Plaintiffs' acknowledgement in their pleadings that there are significantly more widows as compared to living, eligible Filipino war veterans. Compl. ¶ 47.  Restricting FVEC payments to surviving spouses of veterans who applied for payment during the one-year window is a rational means of recognizing the contributions made by Filipino war veterans while limiting the burden on the Treasury and the deficit. See Disabled Am. Veteran v. U.S. Dep't of Veterans Affairs, 962 F.2d 136, 141 (2d Cir. 1992) (recognizing that limiting cost to the Treasury of implementing veterans benefits is a legitimate objective of Congress and the President); see also Sims v. Harris, 607 F.2d 1253, 1257 (9th Cir. 1979) ("concern about the fiscal impact of providing disability benefits to a new class of beneficiaries is a legitimate government objective").

For their part, Plaintiffs make no effort to directly respond to Defendants' arguments or otherwise "negate every conceivable basis which might support a legislative classification ... whether or not the basis has a foundation in the record."  Hernandez–Mezquita v. Ashcroft, 293 F.3d 1161, 1164 (9th Cir. 2002).  Because the classification limiting eligibility of the surviving spouses of Filipino veterans for FVEC benefits to those who were living on the date of its enactment and applied for benefits during the one-year window is rationally related to a legitimate government objective, Plaintiffs' equal protection claim as set forth in their second claim for relief is without merit and is subject to dismissal.

## C.   THIRD CLAIM FOR RELIEF

Plaintiffs allege in their third claim that the FVEC violates the equal protection clause by granting eligible citizens the sum of $15,000, while paying the lesser amount of $9,000 to non-citizens.  Compl. ¶ 49.  Plaintiffs lack standing to bring such a claim.  To satisfy the standing requirement of Article III, there must be the "irreducible constitutional minimum" of an injury-in-fact.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) actual or imminent, not conjectural or hypothetical."  Id. (internal citations and quotation marks omitted).  Here, Plaintiffs do not dispute that each of them is

a United States citizen or the spouse of Filipino veteran who was a United States citizen. As such, they lack standing to assert any injury purportedly suffered by non-citizens.  See Summers v. Earth Island Inst., 555 U.S. 488, __, 129 S.Ct. 1142, 1149 (2009) (noting that the party seeking relief "bears the burden of showing that he has standing for each type of relief sought.")  Moreover, given Plaintiffs' failure to contest this point, the Court construes their non-opposition as a concession that their claim lacks merit.  Thus, the Court dismisses Plaintiffs' third claim for relief.

### D. FOURTH CLAIM FOR RELIEF

#### 1. "Active Military Status"

As noted, there are two aspects to Plaintiffs' fourth claim for relief.  First, the Complaint alleges that under the terms of the FVEC, the service of Filipino war veterans has been recognized as "active military status."  Compl. ¶ 51.  Plaintiffs argue that since their service has been recognized as "active military service," there no longer is any reason for "discriminating" against Filipino veterans "by disqualifying them from receiving similar veterans benefits" to those received by U.S. veterans, and that "to give them less than what other US citizen military veterans who have served in active military service are entitled to … violates the equal protection clause[.]"  Id. ¶ 51.  Though not entirely clear, it appears that Plaintiffs' contention is that Filipino war veterans, as defined in § 1002(b), should be entitled to the same benefits as any other United States veteran.

Plaintiffs' claim is predicated on a misinterpretation of the FVEC.  The provision referred to by Plaintiffs is § 1002(i), which states, in its entirety, as follows: "RECOGNITION OF SERVICE.—The service of a person as described in subsection (d) is hereby recognized as active military service in the Armed Forces for purpose of, and to the extent provided in, this section."  Pub. L. No. 111 5, Tit. X, § 1002(i), 123 Stat. at 202 (emphasis added).  Thus, despite Plaintiffs' suggestions to the contrary, it is plain that the statute's recognition of "active military service" is limited to § 1002, and does not constitute a general recognition for any other purpose.  Moreover, nothing in the FVEC alters the limitation in the Rescission Act, which expressly provides that the type of service

1    governed therein "shall not be deemed to have been active military, naval, or air

2    service…." 38 U.S.C. § 107(a), (b).  The Court therefore finds no merit to Plaintiffs' claim

3    that the FVEC entitles Filipino war veterans to the same benefits as United States veterans.

4                        **2.    "Complete Release" Provision**

5         The second aspect of Plaintiffs' fourth claim is based on § 1002(h), which provides:

6              (h) RELEASE.—

7                  (1) IN GENERAL.—Except as provided in paragraph (2), the
             acceptance by an eligible person or surviving spouse, as
8            applicable, of a payment under this section shall be final, and
             shall constitute a <u>complete release</u> of any claim against the
9            United States by reason of any service described in
             subsection (d).

10                 (2) PAYMENT OF PRIOR ELIGIBILITY STATUS.—<u>Nothing in
             this section shall prohibit a person from receiving any benefit
11           (including health care, survivor, or burial benefits) which the
             person would have been eligible to receive based on laws in
12           effect as of the day before the date of the enactment of this Act</u>.

13   Pub. L. No. 111 5, Tit. X, § 1002(h)(1), 123 Stat. at 201-202 (emphasis added).  Plaintiffs

14   aver that "[c]onsidering that the payment of claims under 'Filipino Veterans Equity

15   Compensation Fund' is way below that received by other veterans, Sec. 1002(h)(1) of the

16   [Recovery] Act which deems payment under 'Filipino Veterans Equity Compensation

17   Fund' as final payment, violates the equal protection clause and deprives plaintiffs without

18   due process of the benefits that other US [sic] veterans enjoy."  Compl. ¶ 52.

19        Plaintiffs' contention that § 1002(h)(1) deprives them of their rights to equal

20   protection and due process is without merit.  This provision effects a release of claims

21   based upon service in the Philippine Commonwealth Army, the Philippine Scouts, the new

22   Philippine Scouts and the Guerrilla Services only for benefits that are <u>not</u> explicitly

23   authorized by 38 U.S.C. § 107.  The right of "eligible persons" to receive the benefits under

24   § 107 is explicitly preserved by subsection (h)(2).  While there is a disparity created by

25   § 107 in terms of which VA benefits United States and Filipino veterans may receive, that

26   distinction has been held upheld as constitutional for equal protection and due process

27   purposes.  See <u>Quiban</u>, 928 F.2d at 1156 (holding that exclusion of Filipino World War II

28   veterans from certain veterans benefits did not violate equal protection); <u>accord</u> <u>Besinga</u>,

                                         - 14 -

14 F.3d at 1360-63; <u>Filipino Am. Veterans and Dependents Ass'n v. United States</u>, 391 F. Supp. 1314, 1323 (N.D. Cal. 1974) (finding that "the differentiation made by the Congress [under 38 U.S.C. § 107] had a rational basis and, therefore, did not amount to a denial of Fourteenth Amendment equal protection or of Fifth Amendment due process.").  Plaintiffs' challenge to § 1002(h)(1) is therefore dismissed.

## IV.  <u>CONCLUSION</u>

For the reasons stated above,

IT IS HEREBY ORDERED THAT Defendants' Motion to Dismiss is GRANTED. Because amendment to the Complaint would be futile, the claims alleged therein are dismissed without leave to amend.  The Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.

Dated:  April 28, 2011

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge